# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V. and ORANGE S.A., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | | |
| v. | | Civil Action No. 17-84-LPS |
| LENOVO GROUP LTD., LENOVO HOLDING CO., INC., LENOVO (UNITED STATES) INC. and MOTOROLA MOBILITY LLC, | | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

Presently pending in this patent infringement matter is Defendant Lenovo Group Ltd.'s ("Lenovo Group") motion to dismiss for lack of personal jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion"). (D.I. 192) Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V. and Orange S.A. (collectively, "Plaintiffs") oppose the Motion. For the reasons set forth below, the Court recommends that the Motion be GRANTED with prejudice.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiff 3G Licensing, S.A. is an intellectual property licensing corporation that has its headquarters in Luxembourg. (D.I. 19 at ¶ 6) Plaintiff Orange S.A. (formerly France Telecom S.A.) is a multi-national telecommunications solution provider headquartered in Paris, France. (*Id.* at ¶ 7) Plaintiff Koninklijke KPN N.V. is a telecommunications (including fixed, mobile, television and internet) and ICT solution provider headquartered in The Hague, The Netherlands. (*Id.* at ¶ 8)

According to sworn declarations submitted by Kurt Cranor, Defendant Lenovo (United States) Inc.'s Executive Director, North America Chief Financial Officer, (D.I. 194 at ¶ 1), Defendant Lenovo Group is a "holding company" incorporated in China, with its principal place of business in Hong Kong, (*id.* at ¶ 2).[1] Mr. Cranor states that Lenovo Group "has no operations" and "does not develop, manufacture, sell, distribute, or export any products." (D.I. 215 at ¶ 3) He further explains that Lenovo Group:

> is not registered to do business in Delaware, or in any other state in the United States. . . . [] does not have any employees, offices, or bank accounts in Delaware . . . has never paid any taxes or fees in the State. . . . has not authorized anyone in Delaware or the United States to accept service of process on its behalf. . . . does not import or ship any products into the United States . . . [and] does [not] manufacture, sell or offer for sale any products in the United States.

(D.I. 194 at ¶¶ 4-5)

According to Mr. Cranor, the other three Defendants are all affiliates and subsidiaries of Lenovo Group. (*Id.* at ¶ 3; *see also* D.I. 214 at 2) Defendants Lenovo (United States) Inc. and Lenovo Holding Co., Inc. are Delaware corporations with their respective principal places of business in Morrisville, North Carolina. (D.I. 194 at ¶ 3) Defendant Motorola Mobility LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois. (*Id.*)

Additional relevant information regarding Lenovo Group and the personal jurisdiction issues discussed herein will be set out in Section III.

### 2. The Patents

---

[1] In the operative Second Amended Complaint, Plaintiffs allege that Lenovo Group's principal place of business is in Beijing, China. (D.I. 19 at ¶ 9) Mr. Cranor's declaration indicates that this is incorrect and that the corporation's principal place of business is in Hong Kong. (*See* D.I. 193 at 4 n.1) The Court need not resolve this issue, as the dispute is not material to the key factual and legal issues addressed by this Report and Recommendation. (*Id.*)

2

Plaintiffs currently assert infringement of United States Patent Nos. 9,014,667, 7,933,564, 7,995,091 and 6,856,818. (D.I. 19 at ¶ 20; D.I. 200 at 4) Plaintiffs allege that certain smartphones and other mobile telecommunication devices ("accused products") infringe the asserted patents. (*See, e.g.*, D.I. 19 at ¶ 95; D.I. 200 at 4) Among those accused products are the Motorola Moto Z Droid ("Moto Z"), and the Moto G and Moto E products. (*See generally* D.I. 19; *see also* D.I. 201, ex. 2)

### B. Procedural History

On January 30, 2017, Plaintiffs filed a complaint for patent infringement against Defendants, Lenovo (United States) Inc., Lenovo Holding Co., Inc. and Lenovo Group. (D.I. 1) Plaintiffs filed a first Amended Complaint against these same three Defendants on April 3, 2017. (D.I. 12) Plaintiffs then filed the operative Second Amended Complaint on May 30, 2017, adding a new Defendant, Motorola Mobility LLC. (D.I. 19)

Lenovo Group was not served with the Second Amended Complaint until January 4, 2019. (*See* D.I. 193 at 1) Lenovo Group then filed the instant Motion on February 8, 2019. (D.I. 192) The Motion has been referred to the Court for resolution, (D.I. 4), and was fully briefed as of March 8, 2019, (D.I. 214).[2]

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017). When a defendant moves to dismiss a lawsuit for lack of

---

[2] Neither side requested oral argument on the Motion. Nor did either side seek an evidentiary hearing with regard to the issue of personal jurisdiction, or suggest that such a hearing would be necessary at this stage.

personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction; in a situation like this, where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists. *See Nespresso*, 263 F. Supp. 3d at 502; *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014) (citing cases); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). To make out this *prima facie* showing, the plaintiff must "'establish[] with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217, 1223 (3d Cir. 1992) (citations omitted); *see also bioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4647483, at *2 (D. Del. Sept. 26, 2018). In reviewing a motion to dismiss for lack of personal jurisdiction, all factual inferences to be drawn from the pleadings, affidavits, declarations and exhibits must be drawn in the plaintiff's favor. *Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 972 (D. Del. 2013); *Power Integrations*, 547 F. Supp. 2d at 369; *see also Hardwire*, 2014 WL 5144610, at *5.

The Supreme Court of the United States has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted). The Supreme Court distinguished between these concepts in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "'canonical opinion'" in the area of personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation omitted). "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction"

4

encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id.* at 924 (citing *Int'l Shoe*, 326 U.S. at 318); *see also Daimler*, 571 U.S. at 127. A court may exercise "general jurisdiction over foreign (sister-state or foreign-country) corporations" only when the corporation's "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

In order to establish personal jurisdiction in the face of a challenge like that at issue here, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire*, 2014 WL 5144610, at *6. In analyzing the statutory prong, the Court must consider whether the defendant's actions fall within the scope of Delaware's long-arm statute. *Id.*; *Power Integrations*, 547 F. Supp. 2d at 369. In analyzing the constitutional prong, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe*, 326 U.S. at 316). Due process is satisfied if the Court finds the existence of "'minimum contacts' between the non-resident defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe.*, 326 U.S. at 316).

In assessing a personal jurisdiction question in this patent case, authority from the United States Court of Appeals for the Federal Circuit is controlling. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009). With regard to the statutory prong of the analysis, the Federal Circuit defers to the law of the relevant state courts (here, Delaware) and federal courts; in assessing the constitutional prong, the Federal Circuit follows its own law.

*Round Rock Research*, 967 F. Supp. 2d at 973; *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 324 (D. Del. 2013).

B.     **Jurisdictional Discovery**

As a general matter, "jurisdictional discovery should be allowed unless the plaintiff's claim [of personal jurisdiction] is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (citations omitted); *accord Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (citations omitted).[3] If a plaintiff makes factual allegations that suggest the possible existence of requisite contacts between the defendant and the forum state "with reasonable particularity[,]" the court should order jurisdictional discovery. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (internal quotation marks and citation omitted); *Power Integrations, Inc.*, 547 F. Supp. 2d at 369.

However, a court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, "[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in this forum." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995); *accord Draper, Inc. v. MechoShade Sys., Inc.*, No. 1:10-cv-01443-SEB-TAB, 2011 WL 1258140, at *1 (S.D. Ind. Mar. 31, 2011) ("While courts have the power to grant jurisdictional discovery, a motion to dismiss for lack of personal jurisdiction does

---

    3     With regard to the relevant standard for allowing jurisdictional discovery, the Court follows regional circuit law. *Eastman Chem. Co. v. AlphaPet Inc.*, Civ. Action No. 09-971-LPS-CJB, 2011 WL 6004079, at *2 n.4 (D. Del. Nov. 4, 2011) (citing cases).

6

not automatically trigger a right to jurisdictional discovery."). If a plaintiff does not come forward with "*some* competent evidence" that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. *Hansen*, 163 F.R.D. at 475 (emphasis in original). Put another way, a plaintiff may not undertake a "fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma*, 623 F.3d at 157; *see also Mass. Sch. of Law*, 107 F.3d at 1042 (noting that a mere "unsupported allegation" that the prerequisites for personal jurisdiction have been met would amount to a "'clearly frivolous'" claim, and would not warrant the grant of jurisdictional discovery) (citations omitted).

### III. DISCUSSION

#### A. Personal Jurisdiction

As is noted above, in the face of this challenge to personal jurisdiction, the Court must assess whether Plaintiffs have made a *prima facie* showing that Lenovo Group's actions fall within the scope of Delaware's long-arm statute and comport with due process.

With regard to the jurisdictional inquiry, it is not disputed here that the Court does not have general jurisdiction over Lenovo Group. (D.I. 193 at 4; D.I. 200 at 11) Instead, Plaintiffs assert that the Court has specific jurisdiction over Lenovo Group, pursuant to both the "stream of commerce" theory[4] and the agency theory. (D.I. 200 at 6-13) Below, the Court will address each theory separately, in order to determine whether Plaintiffs' allegations as to either theory make out a *prima facie* showing under the test for personal jurisdiction.

#### 1. Stream of Commerce Theory

---

[4] The "stream of commerce" theory is often also referred to as the "dual jurisdiction" theory. The Court will use the former phraseology here, as do the parties in their briefs.

Delaware's long-arm statute, Del. Code Ann. tit. 10, § 3104(c), in pertinent part reads as follows:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State; [or] . . .
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.]

Del Code Ann. tit. 10, § 3104(c) (West 2019); *see also Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343,1351-52 (Fed. Cir. 2016). The stream of commerce theory is based on at least a partial satisfaction of Section 3104(c)(1) and (c)(4) of Delaware's long-arm statute; it "does not demand the full satisfaction of any individual subsection of the" statute, as it only requires that portions of Sections 3104(c)(1) and (c)(4) be satisfied. *Polar Electro Oy*, 829 F.3d at 1352. In *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016), the Federal Circuit determined that because Delaware state courts have not rejected the use of this stream of commerce theory (though those courts have had the opportunity to do so), and because this Court has often applied the theory, it is appropriate to utilize the theory in determining whether a plaintiff has satisfied the requirements of the Delaware long-arm statute. *Id.*

The stream of commerce theory (which rests on a "specific rather than general jurisdiction rationale"), has two requirements. *Id.* A plaintiff must show that "(1) 'there is an intent or purpose on the part of the [defendant] to serve the Delaware market,' and (2) that 'intent or purpose . . . results in the introduction of the product to [Delaware] and plaintiff's cause of

8

action arises from injuries caused by that product.'" *Id.* at 1352-53 (quoting *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1158 (Del. Super. Ct. 1997)).

As to the first of these two requirements, Plaintiffs assert that they have met their burden, in that they have shown that Lenovo Group manufactures and distributes the accused smartphone products with the intent that the products be sold in the United States. (D.I. 200 at 7-8) In support of this claim, Plaintiffs cite to various excerpts from a "2017/18 Annual Report" (the "Annual Report") attached to Lenovo Group's opening brief in support of its Motion. (*Id.* at 7; *see* D.I. 193, ex. A) More specifically, Plaintiffs focus on, *inter alia*, the following Annual Report excerpts:

- "In addition we have strengthened carrier relationships in the important *US market where we also range the Moto Z broadly and continue to own the value segment with the Moto G[.]*"

- "Shipments in North America grew 57 percent year-on-year driven by initial success in mainstream models with carrier expansion during the fiscal year, though more work is needed to sharpen the competitiveness in the high-end segment."

- "In North America, *the Group successfully expanded its carrier channel to all four major U.S. telco partners* since fiscal quarter two, and as such saw strong shipment growth during the fiscal year. Its mainstream products such as *Moto G and Moto E delivered strong volume across the region.* As a result, the Group's smartphone shipments grew 57 percent year on-year, far outpaced the market growth in North America. Nevertheless, more work needs to be done in the breakthrough of high-end smartphone segment *in the U.S.*, which dragged the profit performance in the region during the period under review."

- "With smartphone, the Group will continue to strengthen its core markets in Latin America and North America[.]"

(D.I. 200 at 8 (emphasis added by Plaintiffs) (quoting D.I. 193, ex. A at 10, 20, 22, 44))

9

A key question raised by these excerpts, then, is whether the references therein to "we" or "the Group" are referring to Lenovo Group. If they are, then the above excerpts would provide good evidence regarding the first stream of commerce theory requirement: i.e., that Lenovo Group intends to serve the United States (including Delaware) market with its products (including the accused Moto Z, Moto G and Moto E products).

But Lenovo Group argues that the above Annual Report excerpts are *not* meant to refer to its own intentions or actions. (D.I. 214 at 2) It points the Court to various other portions of the Annual Report, wherein: (1) when the document refers only to Lenovo Group, the document indicates that Lenovo Group will also be referred to therein as "the Company[,]" (*id.* (citing D.I. 193, ex. A at 49, 102, 110, 138, 162, 173 (internal quotation marks omitted)); but (2) when the document refers to the Lenovo Group "together with its subsidiaries[,]" the document indicates that those entities will be collectively referred to as "the Group[,]" (*id.* (citing 49, 162, 173 (internal quotation marks omitted)). Lenovo Group then explains that when the Annual Report is referring to sales-related efforts in the United States, those are references to the acts or conduct of *its subsidiaries*, including the other Defendants in this case, all of which are United States subsidiaries of Lenovo Group. (*Id.* at 2-3)

If the above were all that were in the record, there would still be enough uncertainty on this point to permit a finding that Plaintiffs had made out a *prima facie* showing. To be sure, the Annual Report does seem a bit ambiguous as to exactly what entit(ies) it is referring to when it speaks to the above-referenced activities of "the Group." But on the other hand, if the Annual Report: (1) broadly defines "the Group" to include Lenovo Group, and then (2) goes on to make statements about how "the Group" is committed to selling accused products in the United States, then (3) (absent further clarification in the record), this could amount to evidence that Lenovo

10

Group is *one of a number of entities that together* are taking such actions. *Cf. Int'l Bus. Machs. Corp. v. Expedia, Inc.*, Civil Action No. 17-1875-LPS-CJB, 2019 WL 1571680, at *2-4 (D. Del. Apr. 11, 2019) (concluding that the plaintiff had made out a plausible allegation, sufficient to withstand a Rule 12(b)(6) motion, that defendant Expedia Group controlled its subsidiaries' technical platforms and thus had committed patent infringement, in part because Expedia Group's Form 10-K stated that "[w]e operate several technology platforms" including those accused of infringement, and because although the Form 10-K noted that "we" was meant to refer to Expedia Group and its subsidiaries collectively, this amounted to "some evidence" that Expedia Group was "one of the entities that is meant to be included when the document uses 'we'") (internal quotation marks and citations omitted).

Yet here, crucially, that is not all that is in the record. The record also contains Mr. Cranor's declarations, which explicitly state that Lenovo Group is simply a "holding company[,]" and that it "does not import or ship any products into the United States, nor does [it] manufacture, sell, or offer for sale any products in the United States[,]" (D.I. 194 at ¶¶ 2, 5), because it "has no operations [and] does not develop, manufacture, sell, distribute, or export any products" at all, (D.I. 215 at ¶ 3). Instead, Mr. Cranor explains that it is Defendants Lenovo (United States) and Motorola Mobility LLC who are "responsible for all U.S. activities related to the accused products, including importing, pricing, and selling the accused products in the United States." (D.I. 194 at ¶ 6) Mr. Cranor's statements are clear and appear to leave no room for ambiguity: Lenovo Group is a holding company that does not produce goods or services itself. In light of what Mr. Cranor's declarations add to the overall record on this point, the Court is compelled to find that this record clearly indicates that Lenovo Group does not intend to (nor, in fact, does it) place the accused products into the United States (and Delaware) markets.

Thus, Lenovo Group could not be subject to personal jurisdiction based on the stream of commerce theory.[5]

The results in *3G Licensing, S.A. v. HTC Corp.*, No. 17-83-LPS-CJB, 2017 WL 6442101 (D. Del. Dec. 18, 2017) and *Koninklijke KPN N.V. v. Kyocera Corp.*, Civil Action No. 17-87-LPS-CJB, 2017 WL 6447873 (D. Del. Dec. 18, 2017), two cases that Plaintiffs heavily rely on in their briefing, (D.I. 200 at 7), are not to the contrary.

In *3G Licensing*, HTC Corp., a foreign defendant with its principal place of business in Taiwan, filed a motion to dismiss for lack of personal jurisdiction. 2017 WL 6442101, at *2. In denying that motion and in finding that the stream of commerce theory requirements were sufficiently met, the *3G Licensing* Court noted that in its 2015 Annual Report, HTC Corp. had itself stated that it "maintains a presence in all key markets, including the United States[,]" that its "products are distributed across . . . America" and had noted that it had released particular

---

[5] *See, e.g., Univ. of Mass. Med. Sch. v. L'Oreal S.A.*, No. 17-868-CFC-SRF, 2018 WL 5919745, at *10 (D. Del. Nov. 13, 2018) (holding that plaintiffs failed to sufficiently show that L'Oreal S.A., a foreign parent company, had a sufficient hand in placing products into the stream of commerce such that personal jurisdiction was appropriate in Delaware, even though its subsidiary L'Oréal USA made and sold the products in the United States), *report and recommendation adopted by* 2019 WL 2151701, at *1-2 (D. Del. May 17, 2019); *Nespresso*, 263 F. Supp. 3d at 504-05 (holding that plaintiff failed to make a *prima facie* showing of personal jurisdiction regarding a defendant foreign parent corporation, where that foreign defendant provided declarations stating that it had no role in the design, marketing or sale of the accused products and did not engage in any related manufacturing or sales activity in the United States; the fact that the foreign defendant's United States-based subsidiary was responsible for introducing the accused products into the United States was insufficient to establish personal jurisdiction over the foreign parent defendant pursuant to the stream of commerce theory); *cf. Int'l Business Machs. Corp.*, 2019 WL 1571680, at *3 (noting that in that case, defendant Expedia Group had submitted a declaration from an executive stating that Expedia Group was merely a holding company that had no products or operations and that it did not own or operate any of the accused servers, but nevertheless finding that the plaintiff had made out a plausible case that Expedia Group controlled the accused servers and thus directly infringed; the Court noted it could not take the submitted declaration into account in resolving the Rule 12(b)(6) motion at issue, since the declaration was not an exhibit to the complaint).

smartphones in partnership with a U.S.-based carrier. *Id.* at *3 (internal quotation marks and citations omitted). Unlike the situation here, in *3G Licensing* there apparently was no ambiguity that in the relevant annual report, the key excerpts could amount to an admission that *HTC Corp. itself* targeted the United States market with its products. Additionally, unlike the record here with respect to Lenovo Group, in *3G Licensing* the record demonstrated that HTC Corp. was not merely a holding company with no operations, but instead that it manufactured allegedly-infringing products overseas. *Id.*

In *Koninklijke*, Kyocera Corp., a Japanese company with its principal place of business in Japan, filed a motion to dismiss for lack of personal jurisdiction. 2017 WL 6447873, at *3. In denying that motion and in finding that the stream of commerce theory requirements were sufficiently met, the *Koninklijke* Court cited to Kyocera Corp.'s March 2015 Form 20-F Annual Report, wherein the company stated that it "develops, manufactures and sells mobile phones such as smartphones . . . mainly for telecommunications carriers . . . in Japan and the U.S." *Id.* (internal quotation marks and citations omitted). Again, unlike the situation here, in *Koninklijke* there is no indication that the annual report statements at issue were referring to actions of any entity other than Kyocera Corp. And unlike the record with respect to Lenovo Group here, the record in *Koninklijke* demonstrated that Kyocera Corp. was not merely a holding company with no operations, but instead that it manufactured allegedly infringing products overseas. *Id.*

For the above reasons, Plaintiffs have not met their burden as to the statutory prong of the personal jurisdiction inquiry with regard to the stream of commerce theory, as they have failed to make out a *prima facie* case of personal jurisdiction as to this prong. Thus, the Court need not address the constitutional prong of the personal jurisdiction inquiry as to this theory.

    2.    **Agency Theory**

Plaintiffs next contend that if the stream of commerce theory fails, personal jurisdiction is still proper under an agency theory. (D.I. 200 at 11-13) Under agency theory, a defendant company may be subject to personal jurisdiction under Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate. *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 678-79 (D. Del. 2014). Here, Plaintiffs are asserting that Lenovo Group subsidiaries Lenovo (United States) Inc. and Lenovo Holding Co., Inc. act as Lenovo Group's agents in the United States. (D.I. 200 at 12) Thus, they are asking that the Court ignore the corporate boundaries between the entities and conclude that the conduct of Lenovo Group's agents (which is said to give rise to jurisdiction under the long-arm statute as to them) also be attributed to the parent corporation (i.e., Lenovo Group). (*Id.*); *see also StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, Civ. A. No. 13-490-RGA-MPT, 2013 WL 6002850, at *5 (D. Del. Nov. 13, 2013) (noting that under the agency theory, "only the conduct shown to be instigated by the parent may be attributed to the parent").

The agency theory examines the degree of control which the parent exercises over the subsidiary. *Nespresso*, 263 F. Supp. 3d at 505. To determine whether an agency relationship exists, a court will examine the following factors: "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Id.* (internal quotation marks and citation omitted); *see also Robert Bosch*, 70 F. Supp. 3d at 679.

Plaintiffs argue that they have sufficiently demonstrated that Lenovo Group "directs and controls the infringing actions of its subsidiaries Lenovo (United States), Inc., and Lenovo Holding Co.[.]" (D.I. 200 at 12) In support, Plaintiffs point only to two portions of the record. First, they cite to certain paragraphs in the Second Amended Complaint. (*Id.* (citing D.I. 19 at ¶¶

12, 53, 58, 77, 82, 107, 116, 138, 146, 167 and 173)) Second, they refer to the previously-referenced portions of the Annual Report, in which Lenovo Group purportedly made "statements . . . regarding its efforts to increase its U.S. sales of its infringing handset products." (*Id.*)

These record sources, however, are not helpful to Plaintiffs. The cited portions of the Second Amended Complaint are, as Lenovo Group notes, "entirely conclusory[,]" (D.I. 214 at 5 (emphasis omitted)), since they amount to nothing more than statements that "[o]n information and belief, Lenovo (United States) Inc. operates under the direction and control of Lenovo Group Ltd. and Lenovo Holding Co., Inc.[,]"[6] (D.I. 19 at ¶¶ 53, 58, 77, 82, 107, 116, 138, 146, 167, 173). And, as was noted above in the prior subsection, the record relevant to the Annual Report citations shows that the citations do not refer to the statements or acts of Lenovo Group, a holding company, but instead to those of its operating subsidiaries.

In light of all of this, and in light of the remainder of the record, which establishes that "Lenovo (United States), Inc. and Motorola Mobility LLC are responsible for all U.S. activities related to the accused products, including importing, pricing, and selling the accused products in the United States[,]" (D.I. 194 at ¶ 6), the Court cannot conclude that Plaintiffs have met their burden under the statutory prong of the personal jurisdiction inquiry with regard to the agency theory. *See High 5 Games, LLC v. Daniel Marks*, Civil Action No. 13-7161, 2019 WL 3761114, at *6-7 (D.N.J. Aug. 9, 2019) (concluding that plaintiff failed to plead sufficient facts

---

[6] Of the 11 cited paragraphs, 10 of them contain the exact allegation set out above. The 11th paragraph states instead that "[u]pon information and belief, Motorola Mobility LLC . . . acts under the direction and control of Lenovo Group Ltd." (D.I. 19 at ¶ 12) That 11th allegation is not only entirely conclusory, but it is about a Defendant subsidiary that is not a part of Plaintiffs' agency argument in the first place. Additionally, as Lenovo Group notes, none of these 11 paragraphs are at all related to the assertion that "Lenovo Group directs or controls Lenovo Holding Co., Inc." (D.I. 214 at 5 n.1) So none of these paragraphs could help support an argument that Lenovo Holding Co., Inc. is Lenovo Group's agent in the United States.

demonstrating personal jurisdiction over entities by virtue of an agency relationship, where it pleaded no facts demonstrating financial dependency or that the parent company interfered with the other entities' operations). With Plaintiffs having failed to make out the requisite *prima facie* case as to that prong, the Court need not address the constitutional prong of the personal jurisdiction inquiry with regard to this theory.

B.   **Jurisdictional Discovery**

Plaintiffs lastly argue that the Court should, at a minimum, grant jurisdictional discovery. (D.I. 200 at 14) This request thus implicates the question of whether the standard for making out a *prima facie* showing of personal jurisdiction and the standard for showing an entitlement to jurisdictional discovery regarding personal jurisdiction are the same under the controlling law of the United States Court of Appeals for the Third Circuit.

As was noted above, the Third Circuit has described a *prima facie* showing as one that demonstrates "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank*, 960 F.2d at 1223 (internal quotation marks and citation omitted). And the Third Circuit has also said that "'[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained.'" *Eurofins*, 623 F.3d at 157 (quoting *Mellon Bank*, 960 F.2d at 1223). Additionally, as was set out above, the Third Circuit has explained that to clear the bar for obtaining jurisdictional discovery, the plaintiff's claim must be something more than "clearly frivolous" (i.e., the claim must amount to more than "unsupported allegation[s]"). *Mass. Sch. of Law*, 107 F.3d at 1042 (internal quotation marks and citations omitted)). Could there be a scenario where the plaintiff has not made factual allegations that suggest "with reasonable particularity" that

jurisdiction exists, but yet has established more than a "clearly frivolous" claim that personal jurisdiction exists? Put differently, can a plaintiff be entitled to jurisdictional discovery if it has not made out a *prima facie* showing of personal jurisdiction?

It appears that, pursuant to Third Circuit case law, the answer is "no." Indeed, the Third Circuit has repeatedly indicated that if a plaintiff fails to make out a *prima facie* showing, a grant of jurisdictional discovery would not be appropriate. *See Fatouros v. Lambrakis*, 627 F. App'x 84, 88 (3d Cir. 2015) (district court did not abuse its discretion in declining to allow jurisdictional discovery where plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite minimum contacts"); *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.5 (3d Cir. 2013) (same); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 335-36 (3d Cir. 2009) (noting that where plaintiffs made out a *prima facie* showing of personal jurisdiction, "the opportunity to conduct jurisdictional discovery is likely to benefit them" in ultimately establishing such jurisdiction by a preponderance of the evidence); *Toys "R" Us, Inc.*, 318 F.3d at 456 (explaining that where a plaintiff has made the required threshold showing of presenting factual allegations suggesting with reasonable particularity the possible existence of the requisite contacts, courts have sustained the right to conduct jurisdictional discovery). District courts within the Third Circuit have found the same. *See, e.g., TNK Marine Transp., LLC v. Big 3 Diesel Repair, LLC*, 2:18-CV-01211-MJH, 2018 WL 6602214, at *4 (W.D. Pa. Dec. 17, 2018) (denying the plaintiff's request to take jurisdictional discovery where the plaintiff "only has suggested speculative allegations that discovery *may* likely yield more specific examples of Big 3's contacts with Pennsylvania" which "falls short of setting forth a prima facie case that Big 3 purposefully availed itself in conducting activity in Pennsylvania") (emphasis in original); *McDonough v. Gorman*, C.A. No. 16-203-LPS, 2017 WL

3528846, at *1 (D. Del. Aug. 16, 2017) (jurisdictional discovery may be denied "where the party that bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction") (quoting *S. Seafood Co. v. Holt Cargo Sys., Inc.*, No. CIV.A. 96-5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997)); *Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 618 n.6 (E.D. Pa. 2011) (concluding that if the plaintiff had requested jurisdictional discovery in responding to defendant's motion to dismiss, he would not be entitled to it because he "did not make a threshold prima facie showing of personal jurisdiction").

For the reasons noted above, Plaintiffs have failed to make out the requisite *prima facie* showing of personal jurisdiction. Therefore, they are not entitled to jurisdictional discovery here.[7]

## IV. CONCLUSION

For the reasons set out above, the Court recommends that Lenovo Group's Motion to Dismiss be GRANTED with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss

---

[7] In a single sentence at the end of their answering brief, Plaintiffs state that "at a minimum, to the extent the Court believes it necessary, Plaintiffs should be granted leave to amend their complaint to assert additional jurisdictional facts." (D.I. 200 at 15) But Plaintiffs' brief is silent on what "additional jurisdictional facts" they are referring to here. The Court thus cannot understand why permitting another amended complaint in this scenario would be anything other than a futile act. Nor have Plaintiffs explained why it would. For these reasons, the Court also recommends that the dismissal here be with prejudice.

of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: August 22, 2019

                                      Christopher J. Burke
                                      UNITED STATES MAGISTRATE JUDGE